UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA M. REYNA,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>    Defendant. | No. 2:15-cv-02275 AC<br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[2]  For the reasons that follow, plaintiff's motion for summary judgment will be granted, and defendant's cross-motion for

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.  See https://www.ssa.gov/agency/commissioner.html (last visited by the court on March 21, 2017).  She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

summary judgment will be denied. This matter will be remanded to the Commissioner for further proceedings.

## I.   PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 14, 2011. Administrative Record ("AR") 20 (decision).[3] The disability onset date was alleged to be February 26, 2010. Id. The application was disapproved initially and on reconsideration. Id. On February 11, 2014, Administrative Law Judge ("ALJ") G. Ross Wheatley presided over the hearing on plaintiff's challenge to the disapprovals. AR 20-31 (transcript). Plaintiff testified at the hearing and was represented by her counsel, Robert Smolich, Esq. Stephen B. Schmidt, a Vocational Expert ("VE"), also testified at the hearing.

On March 14, 2014, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 31. On September 17, 2015, after receiving a brief from plaintiff's counsel, and medical records from Palo Alto Medical Foundation as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision, exhibit list, order).

Plaintiff filed this action on November 2, 2015. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 20 (plaintiff's summary judgment motion), 23 (Commissioner's summary judgment motion).

## II.   FACTUAL BACKGROUND

Plaintiff was born on May 24, 1962, and accordingly was, at age 47, a younger person under the regulations, when she filed her application.[4] AR 87. Plaintiff has a high school education, some college, and can communicate in English. AR 44. Plaintiff worked as a

---

[3] The AR is electronically filed at ECF Nos. 12-1 to 16-13 (AR 1 to AR 1,484). The paper version, in 2 volumes, is lodged with the Clerk of the Court. ECF No. 12.
[4] See 20 C.F.R. § 404.1563(c) ("younger person").

customer service representative for an advertising company between 1988 and 2010. AR 188.

### III.  LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Garrison, 759 F.3d at 1009. "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

The court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Rounds v. Commissioner Social Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting evidence").

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner. See Brown-Hunter, 806 F.3d at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency") (internal quotation marks omitted).

The court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination …." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV.   RELEVANT LAW

Disability Insurance Benefits are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii). Plaintiff is "disabled" if she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ….'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting 42 U.S.C. §§ 423(d)(1)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

4

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

V.   THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. [Step 1] The claimant has not engaged in Substantial Gainful Activity (SGA) since February 26, 2010, the Alleged Onset Date (ADO) (20 CFR 404.1571 *et seq.*).

3. [Step 2] The claimant has the following severe impairments: obesity; sleep apnea; hypertension; Carpal Tunnel Syndrome (CTS); and chronic lumbar spine pain with radiculopathy (20 CFR 404.1520(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), as the claimant is able to lift and carry twenty pounds occasionally and ten pounds frequently; is able to stand or walk up to six hours in an eight-hour workday; and is able to sit for up to six hours in an eight-hour workday.  However, the claimant can never climb ladders, ropes, or scaffolds and she can only occasionally climb ramps or stairs, stoop, crouch, and crawl.  The claimant is limited to frequent balancing and kneeling.  The claimant must also avoid concentrated exposure to irritants such as fumes, odors, dust, and

gases, use of hazardous machinery, and unprotected heights.

6. [Step 4] The claimant is capable of performing Past Relevant Work (PRW) as an Administrative Clerk.  This work does not require the performance of work-related activities precluded by the claimant's Residual Functional Capacity (RFC) (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 26, 2010, through the date of this decision (20 CFR 404.1520(f)).

AR 20-31.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 31.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ committed the following legal errors: (1) improperly finding plaintiff's mental health impairments nonsevere at step two and subsequently failing to include any such limitation as part of plaintiff's residual functioning capacity; (2) finding plaintiff's chronic kidney stones impairment nonsevere at step two and subsequently failing to include any associated limitations as part of plaintiff's residual functional capacity; (3) failing to properly consider if plaintiff's spinal disorders meet or medically equal a listed impairment; and (4) failing to address plaintiff's evidence regarding side effects caused by her pain medications.  Plaintiff requests that the matter be remanded to the Commissioner for payment of benefits, or in the alternative, for further proceedings with the appropriate corrective instructions.  (ECF No. 20 at 14).

A.  Mental Impairments

Plaintiff alleges that she is disabled by depression, anxiety, and bipolar disorder. Accordingly, the ALJ was required to follow a special psychiatric review technique ("PRT") at Step Two.  20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental impairments, we must follow a special technique at each level in the administrative review process"); Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 726 (9th Cir. 2011) ("the Social Security Regulations require the ALJ to complete a PRTF [psychiatric review technique form] and append it to the decision, or to

6

incorporate its mode of analysis into the ALJ's findings and conclusions"). Although the ALJ did not apply the psychiatric review technique, he did find at Step 2 that plaintiff had the "medically determinable mental impairments of major depressive disorder, anxiety disorder, and bipolar disorder." AR 23; see 20 C.F.R. § 404.1520a(b)(1) ("[u]nder the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)").

1. Limitations

The ALJ next examined plaintiff's functional limitations – in (1) activities of daily living, (2) social functioning and (3) compensation, persistence and pace – and found that they were all "mild." AR 23-24. These findings are supported by substantial evidence. An examining psychologist, Elizabeth A. Whelchel, Ph. D., performed a "Comprehensive Psychiatric Evaluation" of plaintiff on May 7, 2012. AR 445-49 (Exh. 10F). Dr. Whelchel opined that plaintiff was "able" to carry out "detailed and complex instructions," apparently with no impairment, and that plaintiff was only "mildly impaired" in all other functional areas. AR 449. She assessed plaintiff's Global Assessment of Function ("GAF") score at 60. Id. ("Axis V").[5] Another examining psychologist, David C. Richwerger, Ed. D., performed a "Psychological Evaluation" of plaintiff on April 4, 2013. AR 485-92 (Exh. 17F). After examining plaintiff and

---

[5]

> A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. According to the DSM-IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." A GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning. Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.

Garrison, 759 F.3d at 1003 (citations and some internal quotation marks omitted).

administering a battery of tests, Dr. Richwerger opined that plaintiff had "mild impairment in her ability to perform detailed and complex tasks," and "mild" or "no" impairment in all other functional areas.[6]  AR 491.  Dr. Richwerger assessed plaintiff's GAF at 61.  AR 491.  The ALJ accordingly found that plaintiff's mental impairments were not severe for Step 2 purposes.  AR 23; See 20 C.F.R. § 404.1520a(d)(1) ("[i]f we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe").

### 2. Episodes of Decompensation

Under the regulations in effect at the time of the ALJ's decision, the ALJ was also required to rate the degree of limitation in the final area – episodes of decompensation – using "the following four-point scale: None, one or two, three, four or more."  Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50775 (August 21, 2000).[7]  The ALJ found that plaintiff "has experienced no episodes of decompensation that have been of extended duration."  AR 24.

However, as plaintiff points out, the evidence in the record reveals at least four (4) hospitalizations, from 2008 to 2010, for mental health emergencies.  See ECF No. 20 at 3, 9-10 (record citations).  If these hospitalizations qualify as relevant episodes of decompensation, as plaintiff argues, then plaintiff is disabled under the PRT.  Under the PRT, the occurrence of "four or more" episodes of decompensation "is incompatible with the ability to do any gainful activity."

---

[6] Because the court finds that the ALJ committed reversible error by failing to address plaintiff's emergency mental health hospitalizations, the court does not address plaintiff's argument that the ALJ erred by failing to include these "mild" mental limitations in the hypotheticals to the Vocational Expert, and failing to include them in the RFC.  Resolution of this issue is not obvious inasmuch as neither party has fully argued whether or not binding Ninth Circuit authority requires it.  See Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996) (finding error where the ALJ "failed to develop the record, as he was required to do, by asking Dr. Maxwell whether the combination of those ["mild"] impairments could reasonably have caused fatigue"); Cf. Hutton v. Astrue, 491 Fed. Appx. 850, 850-51 (9th Cir. 2012) (unpublished) ("[t]o determine Hutton's RFC properly, the ALJ was required to consider Hutton's physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace").

[7] The "decompensation" factor was removed effective January 17, 2017 (and no longer appears in the current version of 20 C.F.R.).  Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66160 (September 26, 2016).  The court applies the version of the regulations that were in effect at the time of the final decision.  See AR 1 (Appeals Council applies the "regulations … in effect as of the date we took this action").

65 Fed. Reg. at 50775 ("[t]he last point on each scale [here, 'four or more' episodes of decompensation'] represents a degree of limitation that is incompatible with the ability to do any gainful activity").

On August 22, 2008, plaintiff was admitted to Eden Partial Hospitalization program, and "was suicidal at the time during her admission …." AR 996 (Exh. 22F), 1238 (Exh. 24F). On September 26, 2008, plaintiff was "admitted to acute inpatient psychiatric services after she decompensated while participating in partial hospitalization and was having suicidal ideations." AR 992, 994. On October 6, 2008, plaintiff was taken to the emergency room at Eden Medical Center on a "suicidal overdose" and placed on a "5150" hold.[8] AR 846-49 (Exh. 21F) ("[a] 5150 was on the patient"). After plaintiff was stabilized, she was "admitted to the psychiatric unit." AR 849. Plaintiff was then transferred to Fremont Hospital on a "5150" hold. AR 517-20 (Exh. 19F), 532 ("pt was placed on 5150 DTS after she overdosed on 50 tabs of Xanax"). On November 17, 2010, plaintiff was admitted to Alameda County Medical Center on another "5150" hold after she took an apparent overdose of narcotics in what appeared to be another suicide attempt. AR 326 (Exh. 2F). At that time, plaintiff's GAF was assessed at 45 and 55. AR 327, 328.

Under the applicable regulations:

> Episodes of decompensation may be inferred from … documentation of the need for a more structured psychological support system … e.g., hospitalizations ….

Listing of Impairments, 20 C.F.R. Pt. 404, Sept. P, App. 1 ("Listings") ¶ 12.00C(4). Such hospitalizations meet the Listings if there are "three episodes within 1 year … each lasting for at

---

[8]

> When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer … may, upon probable cause, take … the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.

Cal. Welf. & Inst. Code § 5150(a).

least 2 weeks." Id.  However, even if there are "more frequent episodes of shorter duration," the ALJ is required "to use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." Id.

The ALJ does not address these hospitalizations.  Indeed, the only one the ALJ even mentions is the 2010 hospitalization and 5150 hold, but there is no analysis of it, no discussion of whether this is an episode of decompensation, and no discussion of how, if at all, it influenced the sequential evaluation.  See AR 23.  As for the three hospitalizations in 2008, there is no mention of them in the ALJ's decision.

On appeal, the Commissioner argues that the state agency psychologists "considered Plaintiff's history of psychiatric hospitalizations, but found based on the overall record that Plaintiff had a non-severe mental impairment." ECF No. 23 at 17, citing AR 80, 99.[9]  This observation, while true, is beside the point.  The issue for the PRT is whether these episodes of decompensation *occurred*, not whether on the "overall record," plaintiff's impairment was severe or non-severe.  If plaintiff had "four or more" episodes of decompensation, she is disabled without any further inquiry into the "overall record."  65 Fed. Reg. at 50775.[10]

### B.  Other Impairments

#### 1.   Kidney stones

The ALJ found that plaintiff had the impairment of "kidney stones," but determined that the condition was "not severe." AR 23.  This determination was based upon the ALJ's finding that plaintiff "was found to be without stones including a ureteral stone and a doctor noted the condition was stable with no evidence of a renal tumor." AR 23.  The "without stones" finding appears to be incorrect, as there is overwhelming, uncontested evidence of kidney stones.[11]

---

[9] See AR 80 ("CE indicates psychiatric hospitalization 3x in 2008 and once in last year for SI [suicidal ideation]"), 97 (same).

[10] Even if, on remand, the ALJ applies the new regulations (which omit "decompensation" from the PRT), the ALJ is still required to consider all limitations in his RFC analysis.

[11] Indeed, every citation offered by the ALJ shows the *presence* of kidney stones (in the kidneys or the ureter), not the *absence* of stones (or contains no medical evidence regarding the presence (continued…)

Nevertheless, as the Commissioner argues on appeal, plaintiff failed to show that the impairment "significantly limited her ability to perform basic work activities." ECF No. 23 at 20. Although a reasonable inference from the record is that the kidney stones caused some measure of "flank pain" or "abdominal pain," the pain by itself is not disabling under the applicable rules. It is the effect the pain has on plaintiff's ability to work that bears upon her disability. See 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work"); SSR 96-3p ("[b]ecause a determination whether an impairment(s) is severe [at Step 2] requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process");[12] Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (plaintiff "has the burden of proving that these impairments or their symptoms affect his ability to perform basic work activities").

Plaintiff identifies nothing in the record that indicates that pain from plaintiff's kidney stones had any effect on her ability to work. Accordingly, the court cannot find that the ALJ erred in finding plaintiff's kidney stones to be non-severe. Plaintiff is correct that the ALJ did not consider any limitations from the kidney stones or associated pain in the RFC. However, it was plaintiff's burden to present evidence of such limitations, and she failed to do so. Accordingly, the court cannot find that the ALJ erred in not including the kidney stones or associated pain in the RFC finding.

---

or absence of stones). See AR 374 (post-op test shows "stone laterally mid left kidney"), 422 ("It *sounds like* the stone has passed" (emphasis added), 674 75 (plaintiff has "active stone disease," and she "*does have stones*, but stable, and no evidence of current ureteral stone," and past imaging shows "numerous" stones ("renal calculi") (emphasis added), 687 (no medical evidence of the presence or absence of kidney stones), 691 (showing diagnosis of "Ureteral stone | Ureteric stone | [Code] 592.1), 733 (a "CT scan" was done "which showed kidney stones on the right side," and that she "was given Percocet which worked for her …"); 738 ("Flank pain … possible kidney stone passing or passed"). While this erroneous finding does not affect the outcome of this case, there is no reason the ALJ should repeat the error on remand.

[12] Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether A Medically Determinable Impairment Is Severe, 61 Fed. Reg. 34468, 33469 (July 2, 1996).

2.   Listings § 1.04A – Disorders of the spine

The applicable Listings requires, among other things, that "if there is involvement of the lower back," there must be evidence of "positive straight-leg raising test (sitting and supine)." Listings § 1.04A. The ALJ found that "physical examinations of the claimant showed the claimant had … negative straight leg raising tests." AR 29. The ALJ's finding that the straight leg tests were negative is supported by substantial evidence, notwithstanding the existence of a single, isolated finding that is arguably conflicting.[13] See AR 396 [Exh. 3F/67] (Dr. Lu, January 19, 2011: "Bilateral SLR maneuvers were negative"), 417 [Exh. 3F/88] (December 13, 2010, Dr. Kehl: "Straight leg raises are negative for radiating pain"), 444 [Exh. 9F/3] (April 28, 2012, Dr. Chen: "Straight-Leg Raising was negative"), 480 [Exh. 16F/4] (March 21, 2013, Dr. Sharma: "Straight leg raise is negative"). Accordingly the court can find no error here.

3.   Side Effects of Medication

Plaintiff argues that the ALJ failed to account for the side effects of plaintiff's medications. However, plaintiff made no showing that the side effects caused any limitations on her ability to work, and she identifies no such evidence on appeal. Accordingly, the court can find no error here.

C.  Harmless Error Analysis

The ALJ erred by failing to consider plaintiff's four emergency mental health hospitalizations under the "episodes of decompensation" prong of the PRT that was in effect at the time the ALJ rendered his decision. An error is harmless where "the ALJ would have reached the same result absent the error." See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012). Here, the error is not harmless, because if the ALJ had found that each of the hospitalizations

---

[13] See AR 365 (Exh. 3F/36) (May 18, 2011, Dr. Lu: "Bilateral SLR [straight leg raise] caused low back pain"). The Commissioner, on appeal, argues that this finding is not conflicting, because the reported pain was in plaintiff's lower back, rather than her leg. ECF No. 23 at 22-23. The court need not address the argument. Even if the evidence is conflicting, the ALJ acknowledged the "conflicting" evidence, and the court finds nothing that would warrant disturbing the ALJ's resolution of the conflict. See Andrews, 53 F.3d at 1039 ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities").

were in fact relevant episodes of decompensation, and each of extended duration (or the equivalent), he would be required to find that plaintiff was disabled. See 65 Fed. Reg. at 50775 ("[t]he last point on each scale [here, 'four or more' episodes of decompensation] represents a degree of limitation that is incompatible with the ability to do any gainful activity").

## VI. REMAND

Based upon the ALJ's error, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Social Security Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the record has not been fully developed. The evidence of plaintiff's emergency mental health hospitalizations is in the record, but was not addressed or developed by the ALJ. The ALJ must have the opportunity to address this evidence in the first instance. The matter will accordingly be remanded for further proceedings.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23), is DENIED;

3. This matter is REMANDED to the Commissioner for further proceedings consistent with this opinion; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 21, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE